J-S49001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF:  J.L., A MINOR

APPEAL OF:  A.V., FATHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 702 MDA 2015

Appeal from the Decree Entered March 20, 2015
In the Court of Common Pleas of Luzerne County
Orphans' Court at No(s): A-8203

BEFORE:  BENDER, P.J.E., ALLEN, J., and OLSON, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 04, 2015**

A.V. ("Father") appeals from the decree entered on March 20, 2015, that granted the petition filed by the Luzerne County Children and Youth Services Agency ("CYS") to involuntarily terminate his parental rights to his minor, male child, J.L. ("Child") (born in December of 2008) pursuant to section 2511(a)(1) and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. We affirm.

In its opinion, the orphans' court set forth the following factual history of this case:

> It is unrebutted that … [C]hild's most recent placement commenced when he was removed from the care of [A.L. ("Mother")] on June 20, 2012.  The paramount reason for placement was Mother['s] placing [Child] in an unsafe situation. [Child] had been deemed dependent prior to June 20, 2012 and remained dependent at the time of his repeat placement.  It was Mother's lack of parenting and lack of supervision of [Child] and his siblings that led to an initial finding of dependency.  [Child] had been returned to Mother's custody prior to the June 20, 2012 placement.  Father has been incarcerated effective one and one-half months subsequent to [Child's] birth until the present. In June of 2012, [Child] was placed in a foster home.  He remained in the initial placement for one month and then moved

to a pre-adoptive placement where he remained until April of 2014. The foster father passed away and the foster mother was not able to raise [Child] alone. In April of 2014, [Child] moved to his current home and has been residing with his current foster parents until the present. The record supports the finding that from the date of [Child's] birth until the present, Father has not had any contact with the minor child.

Orphans' Court Opinion (O.C.O.), 5/14/15, at 2 (citations to the record omitted).

On April 17, 2014, CYS filed petitions for the involuntary termination of parental rights of Mother and Father. A hearing was held regarding termination of Mother's parental rights, which concluded on February 12, 2015. A subsequent hearing was held on March 5, 2015 concerning termination of Father's parental rights. At the hearing, CYS presented the testimony of Jo-Ann Costanzo, a Child Protective Services ("CPS") intake supervisor at CYS, and Father testified on his own behalf. On March 6, 2015, the orphans' court issued decrees (entered on the orphans' court's docket on March 20, 2015) terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b), and terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8) and (b). Mother did not file an appeal.

However, on April 15, 2015, Father filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2) and (b). In his brief, Father raises the following sole issue on appeal: "Whether the trial court erred in finding that children and youth services proved the elements of termination with respect to 23 Pa.

C.S.A. Section 2511(a)(1) and 23 Pa. C.S.A. Section 2511(b), through clear and convincing evidence." Father's Brief at 3.

We review an appeal from the termination of parental rights with the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 575 Pa. 647, [654-655,] 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, [165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re S.H.*, 879 A.2d 802, 806 (Pa. Super. 2005). We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003) (internal quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interest of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511; other citations omitted). This Court must agree with only one subsection of 2511(a), in addition to section 2511(b), in order to affirm the termination of

parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In this case, the orphans' court concluded that CYS provided clear and convincing evidence that Father's parental rights should be terminated pursuant to sections 2511(a)(1) and (b). Those provisions provide as follows:

> **(a)  General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> ***
>
> **(b)   Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

As we addressed the application of section 2511(a)(1) in *In re C.M.S.*, 832 A.2d 457, 461 (Pa. Super. 2003), we noted:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition,

which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

*Id.* (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)). In *C.M.S.*, we further acknowledged the following statement by our Supreme Court:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life'.

*C.M.S.*, 832 A.2d at 462 (quoting *In re Burns*, 379 A.2d 535, 540 (Pa. 1977)).

Here, in support of its finding that Father failed to perform his parental duties, which established grounds for termination under 23 Pa.C.S. § 2511(a)(1), the orphans' court stated the following:

The credible and uncontradicted testimony of Jo-Ann Costanzo, CPS intake supervisor at [CYS], is [that] Father has not had any contact with [Child] since the date of placement, on June 20, 2012, and even since [Child's] birth [in December of 2008], until the filing of the [p]etition for [t]ermination of [p]arental rights on April 17, 2014. Ms. Costanzo testified that Father was indicated as the natural Father on the birth certificate. She further testified that prior to repeat placement of [Child] on June 20, 2012, the Agency kept Father apprised of [Child's]

placement based upon the aforementioned prior finding of dependency. Father forwarded a letter to [CYS] dated October 11, 2011 stating that he never signed an acknowledgement of paternity[,] … nor did he take a paternity test proving that he was the [f]ather. Father further stated in his October 2011 letter that he needed to stay focused on rehabilitating himself and that he wanted to take a paternity test. He also stated that once a paternity test establishes that he is the natural father of [Child], he would then acknowledge [Child] as his son and would be more willing to have a personal relationship with [him] once he is released from prison. Father stated that his release date would be in 2019 or in 2017 at the earliest.

Father wrote another letter prior to placement of [Child] dated March 21, 2012. In that letter, Father stated again that he had not taken a paternity test to establish that he is the [f]ather of [Child]. Father further requested that the agency refrain from advising him in writing of the court dates since he cannot attend them. He stated that he was 500 miles away and would not be released until 2019. In response, the agency attempted to contact Father's counselor in [an] attempt to have Father undergo the paternity test. However, Ms. Costanzo stated that she was unaware whether any testing was done and that she did not receive the results of any testing performed upon [Father]. Despite [his] request for [CYS] to stop advising him of the court dates and updates, [CYS] continued to update Father with notice of all proceedings, including the shelter care that took place in June of 2012.

Between the date of placement of June 20, 2012 until the filing of the [p]etition for [t]ermination of [p]arental [r]ights on April 17, 2014, Father only wrote one letter to [CYS] stating again that he did not take a paternity test establishing he is [Child's] [f]ather. He further stated in his letter that he did not have an opportunity to address the court in court proceedings even though Father was advised by [CYS] of every court proceeding. He stated that he wanted the [c]ourt to give him and [Child] a chance to be a family once he would be released from incarceration in 2019. However, he renewed his request to take a paternity test to establish whether he is the [f]ather of [Child].

O.C.O. at 5-7.

Father asserts that he was incarcerated throughout the entire time Child was in placement and contends that the orphans' court failed to consider the efforts he made while incarcerated. Father's Brief at 5. However, we have previously asserted:

> A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise "reasonable firmness" in resisting obstacles placed in the path of maintaining the parent-child relationship.

*C.M.S.*, 832 A.2d at 462. Moreover, in *In re McCray's Adoption*, 331 A.2d 652 (Pa. 1975), our Supreme Court considered the effect of a parent's incarceration on abandonment and held:

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*Id.* at 655.

In the present case, it is clear that Father failed to use the resources available to him while incarcerated, as the record indicates that he failed to do any of the following: (a) make any telephone calls to CYS; (b) have his corrections facility counselor telephone CYS; (c) write letters other than the April 2, 2014 letter; (d) contact CYS to inquire as to the well-being of Child; (e) financially support Child; (f) send cards or letters directly to Child; (g)

request visitation with Child in any manner; (h) request telephone calls with Child; and/or (i) provide gifts to Child on Child's birthday or holidays. O.C.O. at 7.

Finally, the orphans' court noted that despite Father's awareness of the court proceedings and his right to have counsel provided, Father did not request counsel, nor did he request to participate in any of the hearings. *Id.* at 7. Father testified that he declined to request counsel because he wanted to first take a paternity test. *Id.* at 8. Moreover:

> Ms. Costanzo testified that Father was initially sent a letter upon placement of [Child] on June 20, 2012 which explained that Father had a right to have visits with [Child]. Ms. Costanzo testified that the service plan which was provided to Father also explained how Father could have visits with [Child] and how parents should be maintaining contact with [Child]. Nevertheless, despite the information provided to [him], Father never requested to have visits with [Child]. Instead, he requested that [CYS] stop mailing him legal documents regarding this matter so that he could focus on himself in prison.
>
> The [c]ourt, therefore finds that based upon the testimony of Ms. Constanzo and the evidence presented before the [c]ourt, Father has refused or failed to perform his parental duties since the date of placement on June 20, 2012.

*Id.*

The record clearly reflects that Father made no attempts to form a relationship with Child. Accordingly, we conclude that the orphans' court's determinations regarding section 2511(a)(1) are supported by sufficient, competent evidence in the record.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b)

- 9 -

are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1992)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

As part of its bonding analysis, the orphans' court appropriately examined Child's relationship with the foster parents. *See T.S.M.*, 71 A.3d at 267-68 (stating that existence of a bond attachment of a child to a parent will not necessarily result in the denial of a termination petition, and the court must consider whether the child has a bond with the foster parents). The orphans' court noted the following:

> Ms. Costanzo testified that [Child] has been with the foster parents since April of 2014. According to Ms. Costanzo, [Child] has assimilated into the household in which he is placed. The foster parents also have custody of [Child's] two siblings and

there are a few animals in the home. [Child] is very attached to his siblings as he has lived with his siblings throughout his life. [Child] is also included in all activities with the family. They celebrate birthdays and other family functions together.

According to Ms. Costanzo, the foster parents meet all of [Child's] physical needs. They provide the child with food, clothing, and shelter. They also meet [Child's] developmental needs. The foster parents are involved in [Child's] school and also [e]nsure that he is meeting all of his "milestones." They also [e]nsure that [Child's] medical needs are met. [Child] is up to date with all of his immunizations. The foster parents also meet [Child's] emotional needs. Ms. Costanzo testified that the foster parents provide [Child] with love, support and stability. Based on Ms. Costanzo's personal observations, [Child] is very comfortable around the foster parents. He sits on their laps and is very loving around them.

In addition, Ms. Jones, the caseworker, visited the foster parents' home once per month and based on her records and Ms. Costanzo's observations, [Child] has a close bond with the foster parents. [Child] is very happy and loving in the home. The bond is also reciprocated by the foster parents. They express their love for him and plan many activities with him. Ms. Costanzo testified that there is not a bond existing between the Father and [Child]. [Child] has never met his Father. Ms. Costanzo testified that there would not be any detrimental effect on [Child] if Father's parental rights were terminated. In the event [Child] is adopted by the foster parents, Ms. Costanzo believes the adoption would have a positive effect upon [him].

O.C.O. at 11-12.

As there is competent evidence in the record that supports the orphans' court's credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Father, we conclude that the court did not abuse its discretion as to section 2511(b). *See S.P.*, 47 A.3d at 826-27. Accordingly, we affirm the orphans' court's decree terminating Father's parental rights to Child.

Decree affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/4/2015